**In re The QUALSTAN CORPORATION,
Debtor.**

**Efficient Air Inc., Plaintiff,**

v.

**The Qualstan Corporation, and National City Bank NA,
Defendants.**

**Bankruptcy No. 02–60473.
Adversary No. 02–02543.**

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

Nov. 24, 2003.

Joseph M. Patchen, Columbus, OH, for Plaintiff.

Susan L. Rhiel, Columbus, OH, for The Qualstan Corporation.

Amelia A. Bower, Columbus, OH, for National City Bank NA.

Guy R. Humphrey, Columbus, OH, for Official Committee of Unsecured Creditors.

*MEMORANDUM AND OPINION*

DONALD E. CALHOUN, JR.,
Bankruptcy Judge.

This matter came before the Court upon the Motion for Summary Judgment of National City Bank ("NCB"), Motion of Plaintiff Efficient Air, Inc. ("EAI") for Partial Summary Judgment Against Defendant National City Bank, Brief of National City Bank in Opposition to the Motion for Summary Judgment of Efficient Air, Inc., Memorandum Contra of Plaintiff Efficient Air, Inc. to Motion for Summary Judgment Filed by Defendant National City Bank. In its Motion for Summary Judgment, NCB seeks to dismiss EAI's Complaint, which asks the Court to determine the validity, priority, and extent of liens. EAI, in its Partial Summary Judgment Motion, moves the Court for a ruling that its mechanics' liens have priority over NCB's mortgage liens.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the General Order of Reference entered in this district. This is a core proceeding under 28 U.S.C. § 157(b)(2).

In its Complaint, EAI states that it has various mechanics' liens on condominium projects called "Holt Park," "Brice Green" and "Alkire Park." EAI asserts that it remains unpaid for the work done on the Alkire Park, Holt Park and Brice Green Projects in the total amount of $76,257.00. EAI asserts that its mechanics' liens have priority over any mortgage liens that NCB might have. NCB, in its Answer, states that EAI does not have priority and that O.R.C. §§ 5301.232 and 1311.14 give its mortgage liens priority over EAI's mechanics' liens.

### I. *FACTS NOT IN DISPUTE*

The parties presented factual summaries in their motions. The parties also placed various evidentiary documents into the record, including affidavits, copies of mortgages, business records, etc. Based upon the Court's review of the factual summaries and the record, the following facts are not disputed:

The Debtor Qualstan Corporation ("Qualstan") is a condominium developer that filed a petition for relief under Chapter 11 of the United States Bankruptcy Code on August 14, 2002. According to uncontradicted affidavits and business records, Qualstan acquired the Alkire Park property on July 14, 1997. The deed for acquisition of the property was recorded on July 16, 1997. On July 23, 1997, Qualstan filed a Notice of Commencement for the Development of the Alkire Park Project. Qualstan acquired the Holt Park property on or about November 27, 1997. The deed of acquisition of the property was recorded on December 2, 1997, and on February 24, 1998, a Notice of Commence-

ment was filed for the development of the Holt Park Project. On or about June 4, 1998, Qualstan acquired the Brice Green property. The deed of acquisition of the property was recorded on June 4, 1998, and the Notice of Commencement for the Brice Green property was filed on August 6, 1998.

The Plaintiff EAI was hired by the Debtor to perform heating, ventilation and air conditioning work. EAI provided labor and materials for construction of various single family condominium units, including the Holt Park, Brice Green, and Alkire Park units. The Plaintiff did not get paid for labor and materials provided from October, 2001 to December, 2001 on the three projects. EAI recorded its affidavits and mechanics' liens on the Debtor's properties for the unpaid work in February, 2002.

Defendant NCB provided a line of credit to the Debtor. On October 31, 1995, NCB filed a mortgage in Franklin County, Ohio. The mortgage, titled "Open–End Mortgage, Assignment of Rents and Security Agreement" (the "1995 Mortgage"), secured a $10,000,000.00 revolving line of credit promissory note. NCB does not contend that the Alkire Park, Brice Green or Holt Park project was provided as security in the 1995 Mortgage. On December 9, 1997, the 1995 Mortgage was modified by the execution of a Mortgage Modification Agreement ("First Modification") between NCB and the Debtor. The First Modification was recorded in Franklin County on December 16, 1997. According to NCB, the First Modification was filed for record **WITHOUT** the legal descriptions attached for Holt Park and Alkire Park real estate. The First Modification was subsequently refiled with the legal descriptions on March 16, 1998 (Second Modification). In its brief, NCB states that the projects added to the 1995 Mortgage via the subsequent modifications included the Holt Park and Alkire Park projects. After the Second Modification, NCB filed various other modifications to the 1995 Mortgage that increased the line of credit and brought in other properties as security.

## II. SUMMARY JUDGMENT STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure, incorporated by Bankruptcy Rule 7056 provides:

> [Summary judgment] ... shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The purpose of a motion for summary judgment is to determine if genuine issues of material fact exist to be tried. *Lashlee v. Sumner,* 570 F.2d 107, 111 (6th Cir. 1978). The party seeking summary judgment bears the initial burden of asserting that the pleadings, depositions, answers to interrogatories, admissions and affidavits establish the absence of genuine issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989). The burden on the moving party is discharged by a "showing" that there is an absence of evidence to support a nonmoving party's case. *Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. 2548. Summary judgment will be appropriate if the nonmoving party fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof. *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548. Thus, the ultimate burden of demonstrating the existence of genuine issues

of material fact lies with a nonmoving party. The evidence must, however, be viewed in the light most favorable to the nonmoving party. *Lashlee,* 570 F.2d at 110–111.

The fact that the parties have filed cross motions for summary judgment does not change the standards upon which courts must evaluate summary judgment motions. *Taft Broadcasting Co. v. United States,* 929 F.2d 240, 248 (6th Cir.1991). Courts still must resolve each motion on its own merits drawing all reasonable inferences against the moving party in each instance. *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1391 (Fed.Cir.1987). Where genuine issues of material fact remain, neither motion should be granted. *Id.*

### III. *DISCUSSION*

In its Motion for Summary Judgment, NCB relies on three main issues to assert that its mortgage liens have priority over EAI's mechanics' liens. The first issue raised by NCB is whether, pursuant to O.R.C. § 5301.232, EAI is entitled to priority over NCB with regard to the distribution of proceeds from the Qualstan bankruptcy. Additionally, and in the alternative, NCB asserts that under O.R.C. § 1311.14 the lien of a mortgage given to improve real estate or pay off prior encumbrances is prior to all mechanics' liens. Finally, NCB asserts that EAI's mechanics' liens are defective because proper affidavits were not filed. EAI argues that neither of the mortgage sections apply because the mortgage reflecting the Holt Park, Alkire Park and Brice Green projects as security for the line of credit was not recorded until after EAI's commencement of work on the projects and because the loan proceeds from NCB were not used by Qualstan in accordance with the mortgage statute. EAI also asserts that

its mechanics' liens are not invalid simply because it stated the wrong owner in the affidavits that need to be filed pursuant to the mechanics' liens statute.

### A. O.R.C. § 5301.232

The pertinent portion of Ohio Revised Code § 5301.232 states:

(A) Whether or not it secures any other debt or obligation, a mortgage may secure unpaid balances of loan advances made after the mortgage is delivered to the recorder for record, to the extent that the total unpaid loan indebtedness, exclusive of interest thereon, does not exceed the maximum amount of loan indebtedness which the mortgage states may be outstanding at any time. With respect to such unpaid balances, division (B) of this section is applicable if the mortgage states, in substance or effect, that the parties thereto intend that the mortgage shall secure the same, the maximum amount of unpaid loan indebtedness, exclusive of interest thereon, which may be outstanding at any time, and contains at the beginning thereof the words "OPEN–END MORTGAGE."

(B) A mortgage complying with division (A) of this section and securing unpaid balances of loan advances referred to in such division is a lien on the premises described therein from the time such mortgage is delivered to the recorder for record for the full amount of the total unpaid loan indebtedness, including the unpaid balances of such advances that are made under such mortgage, plus interest thereon, regardless of the time when such advances are made. If such an advance is made after the holder of the mortgage receives written notice of a lien or encumbrance on the mortgaged premises which is subordinate to the lien of the mortgage, and if such holder is not obligated to

make such advance at the time such notice is received, then the lien of the mortgage for the unpaid balance of the advance so made is subordinate to such lien or encumbrance. If an advance is made after the holder of the mortgage receives written notice of work or labor performed or to be performed or machinery, material, or fuel furnished or to be furnished for the construction, alteration, repair, improvement, enhancement, or embellishment of any part of the mortgaged premises and if such holder is not obligated to make such advance at the time such notice is received, then the lien of the mortgage for the unpaid balance of the advance so made is subordinate to a valid mechanic's lien for the work or labor actually performed or machinery, material, or fuel actually furnished as specified in such notice.

Ohio Revised Code § 5301.232.

■ Under O.R.C. 5301.232, "an advance made by the holder of an open-end mortgage has priority over other liens unless the mortgagee (1) has notice of the other liens and (2) is not obligated to make the advance." *Colonial Mortgage Service v. Southard et al,* 56 Ohio St.2d 347, 384 N.E.2d 250 (1978). In this case, this Court must determine if NCB's various mortgages and modifications meet all of the requirements of O.R.C. § 5301.232 and if NCB was obligated to make advances in three projects pursuant to the various mortgages and modifications.

NCB argues that "each of the modifications relates back to the 1995 Mortgage and since this matter turns, in part, on the form and substance of the Mortgage, any decision relating to priorities must start with the terms of the Mortgage.... Because the Mortgage contains the statutory language and advances made are obligatory, NCB is entitled to priority over the EAI liens." Essentially, NCB is trying to argue that December, 1995 is the date of perfection because all subsequent modifications relate back to the 1995 Mortgage. EAI takes exception to that interpretation and states that NCB's priority only relates to the time of the refiling of the First Modification as opposed to the date of the filing of the Mortgage or the First Modification.

■ This court agrees with EAI's interpretation. Section 5301.232(B) states that "[a] mortgage ... securing unpaid balances of loan advances ... is a lien on the premises **described therein from the time such mortgage is delivered to the recorder for record ...**" O.R.C. § 5301.232(B) [emphasis added]. NCB's 1995 Mortgage was filed in December, 1995. However, NCB did not file any security instrument securing the Holt Park, Brice Green or Alkire Park real estate until 1997, and even then NCB failed to record a description of the Holt Park and the Brice Green projects. It was not until March 16, 1998, that NCB filed proper modifications with proper legal descriptions of the Holt Park and the Brice Green real estate. The statute is very clear. A mortgage is only a lien when the premises are described therein and recorded. This Court finds that NCB did not have proper liens on the Holt Park and Brice Green real estate until March 16, 1998, when it recorded the Second Modification with proper legal description of the Holt Park and the Brice Green project. Moreover, this Court concludes that the date of perfection for Alkire Park is also not December, 1995.

Indeed, this is the only finding this Court can make. It was not until March 16, 1998, that NCB put the world on notice that it was using the Holt Park and Brice Green project as security for the money it advanced to the Debtor. And, although the evidence is not clear about the dates

for the Alkire Park real estate, it is clear that Qualstan did not purchase the Alkire Park real estate until mid–1997. Thus, NCB's argument that the date of priority with respect to the three projects should be December, 1995 does not follow logically. There is evidence that Qualstan did not even own the real estate properties in 1995. If the three projects were not even owned by Qualstan in 1995, how could it offer it to NCB as security in 1995? Certainly, the mere filing of a modification years later does not and cannot change the logic that the three projects were not offered as security by the Debtor in the 1995 Mortgage.

■ Because NCB did not have a proper lien on the Holt Park and Brice Green projects until March 16, 1998, and because NCB did not file the First Modification until December, 1997, which is the first time NCB could have recorded the Alkire Park real estate as security, NCB cannot be granted priority over EAI's mechanics' liens pursuant to § 5301.232. In Ohio, "[w]hen work is done pursuant to a contract with the vendee, mechanics' liens attach . . . at the time of the commencement of construction . . ." *Wayne Building & Loan Co. v. Yarborough*, 11 Ohio St.2d 195, 228 N.E.2d 841 (1967) (citing O.R.C. §§ 1311.02 and 1311.13). EAI has proven via affidavits and business records that work commenced on the projects on or before December, 1997. NCB has not offered any evidence to contradict EAI's assertions. Thus, because EAI's mechanics' liens attached in December, 1997 prior to NCB's mortgage lien, NCB cannot have priority pursuant to § 5301.232.

■ NCB's claim of priority pursuant to § 5301.232 also fails because NCB has not proven, and perhaps cannot prove, that it was obligated to make monetary advances under the 1995 Mortgage. Section 5301.232 defines an obligation to make an advance in the following manner: "A holder of a mortgage is 'obligated' to make an advance if such holder or the person to whom the repayment of such advance is owed has a contractual commitment to do so, even though the making of such advance may be conditioned upon the occurrence or existence, or the failure to occur or exist, of any event or fact." O.R.C. § 5301.232(E)(4). In *Yarborough*, 11 Ohio St.2d at 220, 228 N.E.2d 841, the Supreme Court of Ohio found advances under a mortgage not to be obligatory because the mortgagee was not obligated to "advance a certain and definite sum in a particular manner."

In the present case, there is no evidence that NCB had an obligation to advance a certain and definite sum in a particular manner. NCB has not provided any copies of any promissory notes evidencing what sums and in what manner it was making draws to the Debtor. NCB does provide an affidavit of Mr. Winner, the Vice President of NCB, who states the legal conclusion that NCB was "obligated" to advance money. However, Mr. Winner did not state and prove that NCB had an obligation to advance a certain and definite sum in a particular manner. In fact, other evidence seems to disprove that advances were made in an obligatory fashion. Specifically, Mr. Winner, in his deposition conducted by Michael J. Baumann, who has filed a separate adversary case against NCB, seems to indicate that at times NCB's advances on the 1995 Mortgage and subsequent modifications were "out of balance with our collateral" and that NCB had to then do a "more conventional project unit specific lending." Although these statements alone do not indicate that NCB's advances were not obligatory, it does seem to show the erratic lending nature of NCB with respect to the Debtor. NCB, as the summary judgment movant,

has not proven that its advances were obligatory in nature. Therefore, § 5301.232 does not grant NCB's mortgage liens priority over EAI's mechanics' liens.

### B. O.R.C. § 1311.14

NCB also argues that it should be granted summary judgment because the loans granted to the Debtor under the 1995 Mortgage and subsequent modifications were construction loans as defined in § 1311.14. Generally, construction loans under § 1311.14 have priority over mechanics' liens. "R.C. 1311.14, ... directs that mortgages used to finance improvements to real estate and which are otherwise in compliance with the requirements outlined therein, have priority over subsequently filed R.C. 1311.13 liens despite the fact that the mortgage is filed after the commencement of the improvements." *French's Inc. v. Dominic Construction, Inc.,* 1995 WL 1100094 (Ohio App. 11 Dist.) (citing *Yarborough,* 11 Ohio St.2d at 195, 228 N.E.2d 841). Section 1311.14 states in pertinent part:

> Except as provided in this section, the lien of a mortgage given in whole or in part to improve real estate, or to pay off prior encumbrances thereon, or both, the proceeds of which are actually used in the improvement in the manner contemplated in sections 1311.02 and 1311.03 of the Revised Code, or to pay off prior encumbrances, or both, and which mortgage contains therein the correct name and address of the mortgagee, together with a covenant between the mortgagor and mortgagee authorizing the mortgagee to do all things provided to be done by the mortgagee under this section, shall be prior to all mechanic's, materialmen's, and similar liens and all liens provided for in this chapter that are filed for record after the improvement mortgage is filed for

> record, to the extent that the proceeds thereof are used and applied for the purposes of and pursuant to this section. Such mortgage is a lien on the premises therein described from the time it is filed for record for the full amount that is ultimately and actually paid out under the mortgage, regardless of the time when the money secured thereby is advanced.

O.R.C. § 1311.14.

In the case *sub judice,* it is undisputed that NCB's mortgage contains the correct name and address of the mortgagee and recites the necessary covenant. Thus, NCB's loan may have priority over EAI's Mechanics' liens even though it may have been filed after the commencement of the improvements if it otherwise meets with the requirements of § 1311.14.

Another part of § 1311.14 states:

> The mortgagee need not pay out any of the mortgage fund for fifteen days after filing the mortgage. At the end of such period, he may refuse to go forward with the loan or to pay out the fund, in which case, if no funds have been advanced, he shall make, execute, and deliver to the mortgagor, or to the county recorder to be recorded, a proper release of the mortgage, **but if the mortgagee elects to complete the loan, he shall, in order to obtain the priority set forth in this section, distribute the mortgage fund in the following order:**

> (A) The mortgagee may at any time pay off the prior encumbrance, or withhold the amount thereof for that purpose.

> (B) Out of the residue of the fund, the mortgagee may at any time retain sufficient funds to complete the improvement, according to the original plans, specifications, and contracts, and within the original contract price.

(C) The mortgagee may from time to time pay out on the owner's order, directly to the original contractor or subcontractor, or to the owner himself if he is his own contractor, such sums as the owner certifies to be necessary to meet and pay labor payrolls for the improvement.

(D) The mortgagee shall pay on the order of the owner, the accounts of the materialmen and laborers who have filed with the mortgagee a written notice as provided in this section, the amounts due for labor or work then performed and material then furnished for the improvement; and shall retain out of the mortgage fund such money to become due as is shown by the notice served and shall hold such money, and shall pay on the order of the owner, the amounts due to such persons who have served such notices, if the mortgagee has sufficient money in his hands to do so and also to complete the improvement; but if the mortgagee has funds in his hands insufficient to pay all such laborers and materialmen in full and to complete the improvement, he shall retain sufficient money to complete the improvement and to distribute the balance pro rata among the materialmen and laborers who have filed such notices.

(E) If the owner refuses to issue an order to pay the amount of the notice filed, the mortgagee shall retain the whole amount claimed until the proper amount has been agreed upon or judicially determined, provided that the mortgagee may withhold sufficient funds to complete the improvement.

(F) The mortgagee shall pay out on the owners' order, directly to materialmen or laborers who have performed labor or work or furnished material for the improvement.

(G) The mortgagee shall pay the balance of the mortgage fund after the improvement is completed to the owner, or to whomsoever the owner directs.

**In case the mortgagee pays out the fund otherwise than as provided in this section, then the lien of the mortgage to the extent that the funds had been otherwise paid, is subsequent to liens of original contractors, subcontractors, materialmen, and laborers;** but in no case is such a mortgagee obligated to pay or liable at law for more than the principal of the mortgage.

*Id.* (emphasis added). Essentially, this portion of the § 1311.14 states that the only way a construction loan can have priority over construction loans is if the proceeds of the construction loan were distributed in a manner as defined under A through G. *See Barr v. Masterpiece Homes,* 1994 WL 385998 (Ohio App. 8 Dist.). Thus, this Court must make the inquiry whether NCB paid out proceeds of the loan as described in § 1311.14.

According to NCB's Motion and Memorandum, D, E, and G of § 1311.14 are not applicable to its mortgage. This Court must therefore only determine if A,B,C, and F apply. As to Paragraph A, NCB provides its Exhibit 12 and 13 to prove that its construction loan was used to pay off prior encumbrances. Exhibit 12 is an Affidavit of Robert Winner, who, as stated in Section I above, was the Vice President of National City Bank. In his Affidavit, Mr. Winner states that in 1995 NCB wired Transohio Title funds to pay off prior mortgages. Exhibit 12, which is an Affidavit of Larry Press, manager of Lawyers Title Insurance Corporation, states the exact same thing as Mr. Winner's Affidavit, that in 1995 NCB paid off some prior encumbrances of Qualstan. NCB's Exhibits 12 and 13 prove nothing, however, and summary judgment cannot be granted pur-

suant to Paragraph A of § 1311.14. Neither affidavit states what prior encumbrances were paid off. Was it the Holt Park, Brice Green and Alkire Park real estate properties or some other real estate? The Court simply is not told and other evidence indicates that none of the three real estate properties were even bought by Qualstan until 1997.

As to Paragraph B, NCB provides Exhibit 11, which is another Affidavit of Mr. Winner, to prove that NCB retained a residue of the loan fund to complete improvements. Although NCB provides the Affidavit of Mr. Winner to show that loan funds were retained by NCB for improvements, there are no statements in the Affidavit to prove anything of the sort. The Affidavit is completely silent on the subject. Summary judgment cannot be granted to NCB because NCB has not proven that it was a construction loan in keeping with Paragraph B of § 1311.14.

NCB also states that Paragraph C applies and it points to Exhibit 11 to show that NCB paid out on the owner's order, directly to the original contractor or subcontractor, or to the owner himself, such sums as the owner certified to be necessary to meet and pay labor payrolls for the improvement. Once again, Exhibit 11, the Affidavit of Mr. Winner, is silent on the subject, with the only relevant portions stating:

> National City Bank loaned money to the Qualstan Corporation for the construction and improvement of various single family and residential condominium projects. National City had Master Appraisals completed for each project in order to determine the probable amount that any unit or home would sell for. The improvements funded by National City Bank for Qualstan resulted in sale price meeting or exceeding the Master Appraisal amounts for the Holt Park

and Gender Park projects as well as other Qualstan projects.

Certainly, this statement by itself does not prove that NCB paid out sums Qualstan certified to be necessary to meet and pay labor payrolls for the improvement. Finally, NCB also points to Exhibit 11 and the same statements of Mr. Winner to prove Paragraph D applies. Paragraph D references funds paid out by mortgagee directly to materialmen and laborers for improvement. NCB certainly has not proven from Mr. Winner's Affidavit that materialmen and laborers were paid directly by NCB for improvements. Because NCB has not proven that it has met the requirements of § 1311.14, it cannot be granted summary judgment. No evidence has been produced by NCB which would prove that its loan was distributed in a manner as described in Paragraphs A through G of § 1311.14.

### C. O.R.C. § 1311.06

■ In its Summary Judgment Motion, NCB also argues that EAI's mechanics' liens are invalid because of three defects. First, NCB states that EAI listed the wrong owner in the affidavits. Second, it is contended that EAI listed wrong addresses in the affidavits. Third, NCB argues that EAI did not file all of the liens in a timely fashion. The Court will address each of NCB's arguments in inverse fashion. Section 1311.06(B) address the timeliness question. The section states:

> (B) The affidavit shall be filed within one of the following periods:

> (1) If the lien arises in connection with a one-or two-family dwelling or in connection with a residential unit of condominium property as defined in Chapter 5311. of the Revised Code, within sixty days from the date on which the last labor or work was performed or

material was furnished by the person claiming the lien;

(2) If the lien arises under section 1311.021 of the Revised Code, within one hundred twenty days from the date on which the last labor or work was performed or material was furnished by the person claiming the lien;

(3) If the lien is one not described in division (B)(1) or (2) of this section, within seventy-five days from the date on which the last of the labor or work was performed or material was furnished by the person claiming the lien.

O.R.C. § 1311.06(B). NCB argues that Paragraph (B)(1) applies in the present case and EAI only had 60 days to file its liens, which it did not do. EAI states that its liens do not arise in connection with one– or two-family dwelling or in connection with a residential unit of condominium property and thus Paragraph (B)(1) is not applicable. Rather, EAI contends that Paragraph (B)(3) applies. The only difference between Paragraph (B)(1) and (B)(3) in § 1311.06 is the different time period allowed to file liens under those sections. Paragraph (B)(1) gives 60 days after the date of the last work while Paragraph (B)(3) gives 75 days.

In this case, whether Paragraph (B)(1) or (B)(3) applies is an issue of fact. It is undisputed that of the twenty-six (26) mechanics' liens filed by EAI, twenty-three (23) of them were for the Holt Park project. The other three (3) seem to be for the Brice Green project. However, it is not clear what exactly was involved with the Holt Park and the Brice Green projects. NCB has not submitted any evidence to show that EAI's mechanics' lines were in connection with a residential unit of condominium property. Although it is clear that both the Holt Park and Brice Green were condominium projects, it is also clear that EAI was working on those projects when they were commercial projects. The Court cannot make a decision without the presentation of further evidence on this issue.

 NCB also makes the argument that EAI's mechanics' liens are invalid because EAI did not use the proper legal description. In its motion and briefs, NCB has not itemized which of EAI's liens contain an incorrect description. NCB generally states that EAI's description in the affidavits are overboard, containing lots on which it did not do work. Section 1311.06(A) states that any person who wishes to avail himself of the mechanics' liens statute needs to file and record in an affidavit "a description of the property to be charged with the lien." O.R.C. § 1311.06. Description of property in affidavit for mechanic's liens is sufficient if it permits property to be readily identified. *Delskamp Paint & Glass Co. v. Stotter*, 28 NP (NS) 451, 1931 WL 2780 (1931). "A street address is sufficient description of the premises for purposes of mechanics' lien affidavit required by RC § 1311.06 if it would lead an interested party familiar with the locality to identify the property upon an inspection of the site." *Buckeye State Hauling, Inc. v. Troy*, 43 Ohio Misc. 23, 24, 332 N.E.2d 776 (Ohio Ct.Com.Pl. 1974).

 The law is clear that not having the perfect description does not by itself defeat mechanics' liens. Whether EAI's description of addresses on its mechanics' liens affidavits are sufficient are issues of fact which cannot be resolved in a summarily fashion.

 The final issue is whether stating the wrong name on a mechanics' lien affidavit is a fatal flaw. All of EAI's affidavits contain the name Turner Construction instead of having the name of Qualstan Corporation. NCB contends that this is a

fatal flaw and that EAI's mechanics' liens are invalid. EAI argues that it was a mere "typo." Section 1311.06 states:

(A) Any person, or his agent, who wishes to avail himself of sections 1311.01 to 1311.22 of the Revised Code, shall make and file for record ... an affidavit showing ... the name and address of the person to or for whom the labor or work was performed or material was furnished, the name of the owner, part owner, or lessee, if known, the name and address of the lien claimant, and the first and last dates that the lien claimant performed any labor or work or furnished any material to the improvement giving rise to his lien.... The affidavit may be verified before any person authorized to administer oaths, whether agent for the owner, part owner, lessee, lien claimant, or an interested or other party.

O.R.C. § 1311.06.

This Court has found two Ohio appellate court cases which state that if the wrong name is described in the affidavit, the mechanics' lien is invalid.[1] The first case is *Fairfield Ready Mix v. Walnut Hills Associates, LTD.*, 60 Ohio App.3d 1, 572 N.E.2d 114 (1988). In this case, the First District Court of Appeals of Ohio held that an affidavit filed in support of a mechanics' lien, which had the name Lara, Inc. instead of Walnut Hills, invalidated the mechanics' lien. *Id.* The only basis the court gave for its holding was certain reasoning that appears in *C. C. Constance & Sons v. Lay*, 122 Ohio St. 468, 172 N.E. 283 (1930), where the Supreme Court of Ohio stated that the procedural steps necessary to create a mechanic's line must be strictly followed.

The other case that has invalidated mechanics' liens is *Hoppes Builders and Development Company v. Hurren Builders, Inc.*, 118 Ohio App.3d 210, 692 N.E.2d 622 (1996). In this case, the affidavit in support of the mechanics' lines listed Mike Hurren instead of Hurren Builders, Inc. as the owner. The court on that mistake invalidated the mechanics' lien. The court, like the *Walnut Hills* court, relied on the holding of *C. C. Constance* that the procedural requirements for filing mechanics' liens should be strictly construed. *Id.*

This Court believes that both the *Hoppes Builders* and the *Walnut Hills* decisions were wrong and declines to follow their holding. Although both courts were correct in following the mandates of *C. C. Constance*, in which the Ohio Supreme Court stated that the procedural requirements of mechanics' liens' statutes should be strictly followed, the statute itself in this instance is liberal. Section 1311.06 in pertinent part states a lien affidavit must show "... the name of the owner, part owner, or lessee, **if known**." O.R.C. § 1311.06 [emphasis added]. The language "if known" in the statute mitigates in part the requirement to have the absolute correct name. Certainly, if the Ohio legislature intended to have an absolute standard with regard to the names of the owners, it would not have included the "if known" language. This Court declines to grant summary judgment to NCB and invalidate EAI's mechanics' liens simply because EAI listed the wrong name on the affidavits.

IT IS SO ORDERED.

---

1. However, compare *Queen City Lumber Co. v. O.G. Enterprise, Inc.*, 1983 WL 8761 (Ohio App. 1st Dist.). The court in this case did not invalidate the mechanics' lien even though the name in the affidavit was not completely correct.