**In re Millard A. PRESSER, II, Jennifer Jill Presser, Debtors in Possession.**

No. 12–30093.

United States Bankruptcy Court, S.D. Ohio, Western Division.

Jan. 7, 2014.

Jeremy Shane Flannery, Office of the United States Trustee, Columbus, OH, for U.S. Trustee.

Roger E. Luring, Troy, OH, for Debtors.

**Decision Determining Certain Open–End Mortgages Granted to Bank One and Assigned to JPMorgan Chase Secure Obligations Arising Out of a Guaranty Entered into by Debtor Millard Presser and Bank One**

GUY R. HUMPHREY, Bankruptcy Judge.

## I. Introduction

This decision concerns whether certain open-end mortgages granted by joint debtors secure obligations of one of the debtors arising out of a guaranty. For the reasons explained in this decision, the court finds that the mortgages secure that guaranty.

## II. Procedural Background

On January 10, 2012 Millard A. Presser, II and Jennifer Jill Presser (the "Pressers") filed a petition under Chapter 11 of the Bankruptcy Code. On March 26, 2013 the Pressers filed their second amended Chapter 11 plan and disclosure statement. Two secured creditors, JPMorgan Chase Bank, N.A. ("Chase") and Cadlerock Joint Venture II, L.P. ("Cadlerock") objected to the disclosure statement and plan. In order to facilitate the Pressers' pursuit of a further amended plan of reorganization, the Pressers, Chase, and Cadlerock agreed to submit to the court for resolution this dispute between Chase and Cadlerock as to whether two mortgages granted to Chase secure the guaranty obligations of Millard Presser. Resolution of this dispute will determine to whom plan payments should be made relating to either proceeds from the disposition of the mortgaged properties or on account of liens against the properties. Chase holds two mortgages against these properties and Cadlerock holds a judgment lien against them. The only issue is whether Millard's obligations to Chase under the guaranty are secured through Chase's mortgages on these properties. The court has reviewed the memoranda of the parties (docs. 135, 136; 145–148; 167–168) and has reached a decision.

## III. Findings of Fact

On March 6, 1992 the Pressers executed a promissory note in favor of Bank One, N.A. in the amount of $160,000 (the "$160,000 Note"; Chase Exhibit A & Cadlerock

Exhibit A). The $160,000 Note was secured by an open-end mortgage granted by the Pressers to Bank One, Sidney, N.A. on March 6, 1992 covering various real properties, including properties located at 1282 Wapak, Sidney, Ohio (the "Wapak Property") and 401 South Ohio Street, Sidney, Ohio (the "Ohio Property") (the "$160,000 Mortgage"; Chase Exhibit E & Cadlerock Exhibit D). The $160,000 Mortgage was recorded on September 7, 1993. The $160,000 Mortgage was released on September 7, 1993 as to one particular parcel, but remained as a lien against the Wapak Property and the Ohio Property (Chase Exhibit F).

Presser's Auto Parts, Inc. ("Presser's Auto") executed a $75,000 Business Line of Credit Promissory Note with Bank One, N.A., which is dated June 21, 1996 (Chase Exhibit C). The Business Line of Credit Promissory Note was secured by a security agreement covering all of Presser's Auto's non-titled personal property. On the same day, June 21, 1996, Millard Presser signed a document titled "Continuing Guaranty" through which he guarantied all debts of Presser's Auto owed to Bank One, Sidney, N.A. in an amount not to exceed $75,000 (the "First Guaranty").[1] The Guaranty included a checked box that it was "not supported by other security documents." (Cadlerock Exhibit F).

On July 24, 1997 the Pressers granted another open-end mortgage in favor of Bank One, Sidney, N.A. as to the Wapak Property and the Ohio Property to secure a $200,000 promissory note (the "$200,000 Mortgage"; Chase Exhibit G & Cadlerock Exhibit E). The $200,000 Mortgage references the Pressers and Presser's Auto as

the obligors of a $200,000 promissory note. The promissory note is not included in the record; however, the parties do not dispute the obligation.

Additionally, on July 2, 1998 Presser's Auto, through its President Millard Presser, executed another promissory note in favor of Bank One, N.A. in the amount of $75, 000 (the "75, 000 Note"; Chase Exhibit B & Cadlerock Exhibit B). The $75,000 Note was a renewal and extension of the June 21, 1996 Business Line of Credit Promissory Note executed by Presser's Auto (Chase Exhibit C) and was personally guaranteed through a separate document titled "Commercial Guaranty" entered into on July 2, 1998 between Bank One, N.A. and Millard Presser (Chase Exhibit D & Cadlerock Exhibit C) ("the Second Guaranty") (the First Guaranty and the Second Guaranty shall collectively be referred to as the "Guaranties"). The Second Guaranty did not contain language similar to the First Guaranty indicating it was unsupported by other security documents. However, neither did it contain specific language that the obligations arising out of the Second Guaranty were secured, nor did it specifically refer to either of the Mortgages.

Both the $160,000 Mortgage and the $200,000 Mortgage (collectively, the "Mortgages") include the following language concerning the debts secured by the Mortgages: "OTHER DEBTS. Payment by Mortgagor to Mortgagee of all other liabilities and indebtedness, direct or contingent, now or hereafter owing by Mortgagor to Mortgagee." The Mortgages are

---

[1]. No party has asserted that there is any significance to the fact that some of the documents related to this contested matter were entered into by "Bank One, N.A.," while others were entered into by "Bank One, Sidney, N.A." or that there is any legal difference between the two. Accordingly, the court ascribes no significance to those differences and may refer to either or both "Bank One, N.A." and "Bank One, Sidney, N.A." simply as "Bank One."

each described as an "Open-end mortgage."

There is no dispute that all rights to the discussed notes, Guaranties, and Mortgages in question are held by Chase, as successor to Bank One.

On September 17, 2007 Fifth Third Bank filed a Certificate of Judgment against Millard Presser and Presser's Auto with the Montgomery County, Ohio, Clerk of Court, which it later filed with the Shelby County Court of Common Pleas on September 25, 2007 for a judgment in the amount of $150,236, plus accrued interest (Chase Exhibit H; the "Judgment Lien"). Thus, the Certificate of Judgment constitutes a lien against all real property owned by Millard Presser and Presser's Auto located in Montgomery and Shelby Counties, Ohio. The Judgment Lien has been assigned to and is now held by Cadlerock. Both the Ohio Property and the Wapak property are located in Shelby County and, therefore, are subject to the Judgment Lien. *See* Ohio Revised Code § 2329.02.

## IV. Jurisdiction

This court has jurisdiction pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K).

## V. Issues Presented

The parties agree that the Mortgages were recorded prior to the Judgment Lien and, thus, the priority of the liens is not the issue between the parties.[2] The dispute concerns whether the Mortgages now held by Chase secure all debts presently owed by the Pressers, individually or collectively, including and specifically the Second Guaranty to Chase arising out of the Presser's Auto debt. Cadlerock asserts

that the Mortgages do not secure Millard's guaranty liability because: a) the Mortgages only secure the joint liabilities of the Pressers and not their individual liabilities; and b) Bank One failed to indicate in the Guaranties that the Mortgages secure Millard's liability arising out of them.

## VI. Legal Analysis

### A. *Ohio law Applies in Determining Lien Rights on Ohio Real Estate*

■■■ Property interests, including security interests and liens, are created and defined by state law. *Nobelman v. American Savings Bank,* 508 U.S. 324, 329, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993); *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) and *Corzin v. Fordu,* 201 F.3d 693, 700 (6th Cir. 1999). Thus, while what property is included in a debtor's bankruptcy estate is a federal bankruptcy question and rests upon the Bankruptcy Code, bankruptcy courts look to state law to determine the existence and nature of property interests held by debtors, bankruptcy estates, and creditors. Since this is a contested matter involving issues as to the validity, applicability, and enforceability of liens on Ohio real estate, Ohio law applies. *See also* the "Governing Law" sections of the Mortgages and the "Applicable Law" sections of the Guaranties, designating Ohio as the governing law for construction of the Mortgages and Guaranties.

### B. *The Mortgages Comply with Ohio's Statutory Open–End Mortgage Requirements*

An open-end mortgage is defined as "[a] mortgage that allows the borrowing of additional sums, usually providing that at

---

**2.** The priority of mortgages and judgment liens in Ohio is based upon the standard rule of real estate recording—first in time, first in

right. Ohio Revised Code §§ 5301.23(A) & 2329.02; *Basil v. Vincello,* 50 Ohio St.3d 185, 553 N.E.2d 602, 607–08 (1990).

least the stated ratio of assets to the debt must be maintained. A mortgage which provides for future advances on the given mortgage and increases the amount of the existing mortgage." BLACK'S LAW DICTIONARY 1091 (6th ed. 1990).

The statutory requirements of an open-end mortgage in Ohio are provided by § 5301.232 of the Ohio Revised Code.[3] In

3. That statute provides

(A) Whether or not it secures any other debt or obligation, a mortgage may secure unpaid balances of loan advances made after the mortgage is delivered to the recorder for record, to the extent that the total unpaid loan indebtedness, exclusive of interest thereon, does not exceed the maximum amount of loan indebtedness which the mortgage states may be outstanding at any time. With respect to such unpaid balances, division (B) of this section is applicable if the mortgage states, in substance or effect, that the parties thereto intend that the mortgage shall secure the same, the maximum amount of unpaid loan indebtedness, exclusive of interest thereon, which may be outstanding at any time, and contains at the beginning thereof the words "OPEN–END MORTGAGE."

(B) A mortgage complying with division (A) of this section and securing unpaid balances of loan advances referred to in such division is a lien on the premises described therein from the time such mortgage is delivered to the recorder for record for the full amount of the total unpaid loan indebtedness, including the unpaid balances of such advances that are made under such mortgage, plus interest thereon, regardless of the time when such advances are made. If such an advance is made after the holder of the mortgage receives written notice of a lien or encumbrance on the mortgaged premises which is subordinate to the lien of the mortgage, and if such holder is not obligated to make such advance at the time such notice is received, then the lien of the mortgage for the unpaid balance of the advance so made is subordinate to such lien or encumbrance: If an advance is made after the holder of the mortgage receives written notice of work or labor performed or to be performed or machinery, material, or fuel furnished or to be furnished for the construction, alteration, repair, improvement, enhancement, or embellishment of any part of the mortgaged premises and if such holder is not obligated to make such advance at the time such notice is received, then the lien of the mortgage for the unpaid balance of the advance so made is subordinate to a valid mechanic's lien for the work or labor actually performed or machinery, material, or fuel actually furnished as specified in such notice.

(C) The mortgagor may limit the loan indebtedness secured by the mortgage to that in existence at the time of the delivery of a written notice to that effect to the recorder for record, if such notice is executed by the mortgagor in the manner provided in section 5301.01 of the Revised Code, states the volume and initial page of the record or the recorder's file number of the mortgage, and a copy thereof is served upon the holder of the mortgage prior to the delivery of such notice to the recorder for record. Any such notice shall be recorded and indexed by the recorder as an amendment of the mortgage. Such right of the mortgagor to limit loan indebtedness secured by the mortgage is not applicable to interest subsequently accruing on loan indebtedness, loan advances the holder of the mortgage is obligated to make, or loan advances made after the delivery of any such notice to the recorder for record in order to pay for the cost of completing any construction, alteration, repair, improvement, enhancement, or embellishment of any part of the mortgaged premises the financing of which, in whole or in part, the mortgage was given to secure.

(D) The written notices provided for in division (B) of this section shall be signed by the holder of the lien or encumbrance or the person who has performed or intends to perform work or labor or who has furnished or intends to furnish machinery, material, or fuel, or by his agent or attorney, and shall set forth a description of the real property to which the notice relates, the date, parties to, the volume and initial page of the record or the recorder's file number of the mortgage over which priority is claimed for the lien or encumbrance, and the amount and nature of the claim to which the lien or encumbrance relates or the nature of the work or labor performed or to be performed or machinery, material, or fuel furnished or to be furnished and the amount claimed or to be claimed therefor. The written notices provided for in divisions (B) and (C) of this section shall be

order to be a valid open-end mortgage in Ohio, it must contain the words "Open-end mortgage" at the beginning of the document, indicate the mortgage intends to cover future loan advances, and expressly state the maximum indebtedness that will be secured by it. Ohio Revised Code § 5301.232(A). An open-end mortgage that complies with these requirements is a lien on the real estate regardless of when loan advances are made (Ohio Revised Code § 5301.232(B)), but will only secure unpaid balances of loan advances to the extent of the stated maximum indebtedness (Ohio Revised Code § 5301.232(A)). Subsequent liens against the real estate will prime the open-end mortgage to the extent of later advances made under the mortgage if: a) the mortgagee receives written notice of the intervening lien prior to making those advances; and b) the mortgagee is not obligated to make those

advances. Ohio Revised Code § 5301.232(B); *Colonial Mortgage Serv. Co. v. Southard,* 56 Ohio St.2d 347, 384 N.E.2d 250, syllabus (Ohio 1978); *Hotel Builders of Ohio, Inc. v. D.A.T. Hospitality, LLC (In re D.A.T. Hospitality, LLC),* 291 B.R. 438, 440 (Bankr.S.D.Ohio 2003); *Efficient Air Inc. v. The Qualstan Corp. (In re Qualstan Corp.),* 302 B.R. 575, 580 (Bankr.S.D.Ohio 2003).

In this instance, the Mortgages include the phrase "Open-end mortgage" and indicate they apply to future loan advances. The Judgment Lien was subsequent to all the loans and guaranties at issue so the exception for intervening liens does not apply in these circumstances. Cadlerock has not argued the obligations at issue exceed the maximum loan indebtedness stated in the Mortgages ($160,000 & $200,000). Therefore, the Mortgages comply with Ohio Revised Code § 5301.232.

deemed to have been received by or served upon the holder of the mortgage when delivered to such holder personally or by registered or certified mail at the address of such holder appearing in the mortgage or an assignment thereof or, if no address is so given, at the principal place of business or residence of such holder or the statutory agent of such holder within this state or, if such holder has no principal place of business or residence or a statutory agent within this state, when posted in some conspicuous place on the mortgaged premises.

(E) As used in this section:

(1) "Mortgage" includes a mortgage, deed of trust, or other instrument in the nature of a mortgage.

(2) "Mortgagor" includes the mortgagor's successors in interest as disclosed by the records of the recorder or recorders of the county or counties in which the mortgaged premises are situated.

(3) "Holder of the mortgage" means the holder of the mortgage as disclosed by the records of the recorder or recorders of the county or counties in which the mortgaged premises are situated.

(4) A holder of a mortgage is "obligated" to make an advance if such holder or the person to whom the repayment of such advance is owed has a contractual commitment to do so, even though the making of such advance may be conditioned upon the occurrence or existence, or the failure to occur or exist, of any event or fact.

(5) "Statutory agent" means the statutory agent of a corporation as disclosed by the records of the secretary of state and provided for in sections 1701.07, 1702.06, and 1703.041 of the Revised Code.

(6) "Loan indebtedness" does not include unpaid balances of advances made for the payment of taxes, assessments, insurance premiums, and costs incurred for the protection of the mortgaged premises.

(F) This section is not exclusive, does not apply to any mortgage filed or recorded in conformity with section 1701.66 of the Revised Code, and does not prohibit the use of other types of mortgages permitted by law. Ohio Revised Code § 5301.232.

### C. The Language of the Mortgages Includes the Second Guaranty

■ As a matter of contractual interpretation, the court finds the Mortgages have sufficiently broad language to include the Guaranties of Millard Presser. Subparagraphs 1(b)–(e) of the Mortgages broadly describes the debt secured by the Mortgages as including the original promissory note, other advances of sums expended pursuant to the mortgage, future advances to the Pressers, and "all other liabilities and indebtedness, direct or contingent, now or hereafter owing by Mortgagor to Mortgagee." *See* ¶ 1 and particularly ¶ 1(f) "Other Debts."

Although the debt in question arises from guaranties, rather than a promissory note, the Mortgages include all other debts owed, whether direct or contingent, by the mortgagor to the mortgagee. The Second Guaranty is a "continuing and unlimited" guaranty of payment and does not appear conditioned upon legal action against Presser's Auto and represents a separate collateralized obligation. *See Liquidating Midland Bank v. Stecker*, 40 Ohio App. 510, 179 N.E. 504, 506 (1930) ("[I]f the guaranty is one of payment, the guarantor then becomes bound with the principal; that the guarantor then assumes a primary liability to the same extent as did the principal.").

The court finds no reason to give weight to the 2006 internal loan document of Chase submitted by Cadlerock to determine the validity or scope of the Mortgages (Chase Exhibit G). That document is apparently a short summary written by a loan officer years after the loan documents, Guaranties and Mortgages were entered into between the parties and, therefore, provides no probative information as to the intent of the Pressers and Bank One as to those documents. Nor does the court find that this internal document constitutes an admission by Chase that the Guaranties were not secured by the Mortgages. With respect to the Guaranties, the internal memo simply is silent as to the issue of whether the Guaranties are secured or unsecured.

■ Cadlerock also argues that despite their being open-end mortgages, the Mortgages do not secure Millard's individual guaranty liability. Cadlerock contends that the Mortgages do not secure Millard's guaranty liability because the Mortgages define the term "mortgagor" as the Pressers. In other words, Cadlerock asserts that since both the Pressers are described as mortgagors, the Mortgages can only cover joint liability of the Pressers and not the individual liability of either Presser to Chase under the Mortgages. However, the term "mortgagor" is inclusive of obligations owed by either of the Pressers. The Mortgages state, in ¶ 8, that "the term 'Mortgagor' whenever used in this mortgage will include the joint and several liability of not only the persons signing this Mortgage, but also any person or persons who hereafter may assume payment of any or all of the indebtedness, together with the respective heirs, representatives, successors, and assigns of such persons, and the term 'Mortgagee' whenever used in this Mortgage will include any lawful owner, holder or pledgee of any indebtedness." Thus, by definition, the term "mortgagor" covers both the Pressers jointly and the Pressers individually, so any individual liability of the Pressers is encompassed by the Mortgages as long as the debt is otherwise within the scope of the Mortgages.

### D. Ohio Law Does Not Require a Specific Reference to the Second Guaranty in the Mortgages

Cadlerock also argues that Millard Presser's individual guaranty liability is not

secured by the Mortgages because the Guaranties do not reference the Mortgages and, thus, there is no relationship between the Mortgages and the Guaranties. It relies on two unreported Ohio appellate court decisions for this proposition: *Leader Mortgage Co. v. Slattery*, 1996 WL 648739 (Ohio Ct.App. July 12, 1996) and *Cactus Capital Co. v. Mekong Market, Inc.*, 1997 WL 170300 (Ohio Ct.App. April 10, 1997). This argument requires an analysis of those decisions, a separate Supreme Court of Ohio decision, the Mortgages, and the scope of the dragnet clauses of the Mortgages and the Guaranties.

■ Sub-paragraphs (b)–(e) of paragraph 1 the Mortgages can be collectively referred to as a dragnet clause of the Mortgages. A "dragnet clause is one which, on its face, purports to include within the coverage of the mortgage all indebtedness of the mortgagor to the mortgagee, in addition to the specific debt secured by the mortgage, whether incurred before or after execution of the mortgage." *Debts Included in Provision of Mortgage Purporting to Cover All Future and Existing Debts (Dragnet Clause)—Modern Status*, 3 A.L.R.4th 690 (2013). In this case, the $200,000 Mortgage expressly provides that it secures the $200,000 Note and the $160,000 Mortgage expressly provides that it secures the $160,000 Note, while subparagraphs 1(b)–1(e) purport to sweep in additional indebtedness of the Pressers. The issue is the effect of these provisions in relation to the Guaranties.

In *Leader Mortgage v. Slattery*, cited by Cadlerock, the mortgagee filed for foreclosure on the mortgagor's property under a mortgage granted in 1989. Subsequent to the foreclosure sale, the mortgagee's initial loan, entered contemporaneously with the mortgage, was paid in full and funds remained. The mortgagee sought to recover those funds because it had an open-end mortgage and had advanced the mortgagors other funds in 1992. An intervening judgment lienholder also sought the remaining funds. The court found that the judgment lienholder did not provide the proper notice under § 5301.232(B) and (D) to place the mortgagee on notice of its intervening lien. However, the court found that the subsequent 1992 promissory note did not reference the open-end mortgage and stated, without citation to any authority, that "[b]y its very formation, it is clear that an open-end mortgage and the flexibility it allows requires that any subsequent note given that is to be secured by the mortgage, must at the very least reference and demonstrate the relationship with the mortgage under which it was issued." *Slattery* at *3. Since the 1992 note failed to "reference or incorporate" the mortgage, the court found that the open-end mortgage did not secure the advance made by the mortgagee under the 1992 note. Thus, the court held that there must be some reference in the promissory note, guaranty, or other document creating the indebtedness in order for the indebtedness to be secured through a dragnet clause and absent such a reference, the note or guaranty must be determined to be unsecured.

In *Cactus Capital Co. v. Mekong Market, Inc.*, also cited by Cadlerock, the court found an open-end mortgage did not secure a subsequent loan advance. In reaching that conclusion, just as the court had in *Leader Mortgage*, the court in *Cactus Capital* observed that the note executed by the company upon which the advance was made "did not refer to, or otherwise recite any connection with, the 1989 mortgage." *Id.* at *5. However, the critical and distinguishing fact in that case was that the subsequent loan advance was to a third party company that did not own the mortgaged property and unlike this case, the

property owners did not provide a personal guaranty or co-sign the underlying indebtedness for that advance. Thus, there was no indebtedness owed by the mortgagors which was or could have been secured by the mortgage. For that reason, the court finds that *Cactus Capital* provides little guidance in construing the effectiveness or applicability of the dragnet clauses in the Mortgages with respect to Millard's guaranty liability.

Although not cited by the parties, an older decision of the Supreme Court of Ohio also addresses this issue. *See Second Nat'l Bank v. Boyle,* 155 Ohio St. 482, 99 N.E.2d 474 (1951). The court gave this decision careful consideration and allowed the parties to file supplemental briefs on its application to this contested matter. *Boyle* held, among other things, that whether a prior mortgage secures discretionary future advances is a question of intent. *Boyle,* at syllabus, ¶¶ 4 and 5 ("A duly recorded mortgage, purporting to secure future advances which the mortgagee is not obligated to make, will not secure a subsequent advance by the mortgagee to the mortgagor if such advance does not appear to have been made in reliance upon or on the faith of the security of the mortgage. . . . A mortgagee who claims that such mortgage does secure such a subsequent advance must allege that such advance was made either in reliance upon or on the faith of the security of the mortgage.").

Ohio Revised Code § 5301.232 governing open-end mortgages contains no additional requirement that the Guaranties specifically refer to the Mortgages or that they independently evidence an intent that they are secured by the Mortgages. The requirement that the Guaranties, as a subsequent loan advance, be determined by intent is not included in the statute and that statute has been part the Ohio statutory scheme for mortgages in some form since 1967. Instead, the statute provides for more certainty of result. The open-end nature of the mortgage must be prominently disclosed and a maximum indebtedness must be included. Any party which seeks to lend funds to the mortgagor is placed on notice through the recording of the mortgage that it may be subject to a higher priority lien up to a specific amount.

A review of subsequent decisions strongly suggests to the court that the Supreme Court of Ohio would find that Ohio Revised Code 5301.232(A) fully describes the requirements of an open-end mortgage and to the extent *Boyle* imposes additional requirements, its syllabus has been superseded by § 5301.232. *See Drown v. Wells Fargo Bank, N.A.,* 424 B.R. 315, 329–30 (Bankr.S.D.Ohio 2010) (quoting *Meridian Mut. Ins. Co. v. Kellman,* 197 F.3d 1178, 1181 (6th Cir.1999)) (decision explaining that, in the absence of a clear Supreme Court of Ohio precedent, interpreting a statute, the court must "ascertain how [the Ohio Supreme Court] would rule if it were faced with the issue," by considering intermediate appellate cases, if persuasive, and dicta from the Supreme Court of Ohio to determine legislative intent). Specifically, the court's independent review finds that *Boyle* has been little cited by Ohio courts since the enactment of § 5301.232. It was cited in another unreported decision from an intermediate Ohio appellate court in *Munson v. United Nat'l Bank & Trust Co.,* 1983 WL 6410 (Ohio Ct.App. Apr. 19, 1983) which found a subsequent loan was not secured by an open-end mortgage when the obligee failed to have the obligor sign a disclosure statement of separate security. That decision has never been re-cited and, in any event, is closer to the First Guaranty, but not the Second Guaranty. Only months before the enactment of § 5301.232, the Supreme Court of Ohio

cited *Boyle* in a decision which reviewed the conflicting Ohio law in regard to obligatory subsequent advances and lien priority. *Wayne Building & Loan Co. of Wooster v. Yarborough,* 11 Ohio St.2d 195, 228 N.E.2d 841 (1967).

■ Significantly, since the enactment of § 5301.232, the Supreme Court of Ohio has never cited *Boyle* and has stated in dicta that § 5301.232 governs open-end mortgages. *Colonial Service Co. v. Southard,* 56 Ohio St.2d 347, 384 N.E.2d 250, 251 (1978) ("The mortgage held by Colonial was a properly record open-end mortgage securing any advances made by Colonial ... which Colonial agreed to advance (5301.232(A)) ...."). The decision makes no reference to *Boyle.* Neither do the two unreported decisions cited by Cadlerock, which fail to provide clear authority for imposing obligations beyond § 5301.232 on mortgagees holding open-end mortgages. *See also D.A.T. Hospitality,* 291 B.R. at 440 ("An open-end mortgage that complies with the requirements of § 5301.232(A) is a lien on the premises from the date of recording regardless of when advances are made."). In considering all the case law, the court determines the intent of the Ohio legislature was for § 5301.232 to provide a comprehensive set of rules for addressing open-end mortgages and the additional element of establishing intent that the subsequent advance be secured by the mortgages is not part of that scheme.

■ It is also important to mention that Cadlerock focuses on the First Guaranty, perhaps because it is the one that specifically states that no security supports it. Were that the only guaranty, the result would likely be different because of the contractual import of that provision. Cf. *Munson,* 1983 WL 6410. However, the Second Guaranty is silent on the question of security. In that circumstance, the court cannot justify imposing an obligation

greater than that the legislature chose in enacting § 5301.232.

Even if the court would consider applying the additional judicially imposed intent element, there is no policy imperative to do so. Cadlerock ignores that it did not have an intervening lien, a central issue Ohio Revised Code § 5301.232 is designed to address. There is no dispute that the Mortgages are Ohio open-end mortgages. Further, it is undisputed that the indebtedness of Millard Presser under the Guaranties is subsequent indebtedness. Cadlerock's judgment lien was subsequent to all the loans, subsequent advances, guaranties and mortgages now held by Chase. A party does not file a judgment lien as consideration for entering an agreement, but instead to collect on a judgment subsequent to obtaining judgment. In other words, Fifth Third Bank, as the predecessor to Cadlerock, did not rely upon the judgment lien or its priority in its business transactions with the Pressers. Even if it had been so relying, it was on notice of the open-end mortgages and could have done any manner of due diligence regarding the Pressers' loan obligations. Cf. *Sky Bank–Ohio Bank Region v. Sabbagh,* 161 Ohio App.3d 133, 829 N.E.2d 743, 747 (2005) (Decision found open-end mortgage complied with Ohio Revised Code § 5301.232 and potential buyers of the property at issue were on notice that mortgage included all advances, regardless of when they were made). Under those circumstances, this court finds no basis under § 5301.232 to impose a greater responsibility on Chase than chosen by the Ohio legislature to impose limitations upon the unique lien that is an open-end mortgage.

## VII. Conclusion

In conclusion, a construction of each of the Mortgages in its entirety establishes that, from both a statutory and contractual

interpretation view, the debt secured by each of the Mortgages includes the individual obligations of the Pressers to Chase, including Millard's guaranty liability arising out of the Presser's Auto indebtedness to Chase. Accordingly, the court determines that the Mortgages secure Millard Presser's guaranty liability arising out of the Presser's Auto indebtedness to Chase and Cadlerock's Judgment Lien is junior to the Mortgages with respect to both the Wapak Property and the Ohio Property.